910 So.2d 313 (2005)
Christine CONNER, Appellant,
v.
STATE of Florida, Appellee.
No. 5D04-1530.
District Court of Appeal of Florida, Fifth District.
September 2, 2005.
*314 James S. Purdy, Public Defender, and Noel A. Pelella, Assistant Public Defender, Daytona Beach, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Robin A. Compton, Assistant Attorney General, Daytona Beach, for Appellee.
SAWAYA, J.
Eight months after she was issued a trespass warning not to return to a certain Wal-Mart store, Conner returned, proceeded through the store with a shopping cart containing empty plastic bags and a duffle bag, and filled those bags with items from the store. After donning a suede jacket she obtained from a clothing rack, Conner left the store without paying for the merchandise, which consisted of 95 items worth $1,129.60. Two loss prevention officers who had observed Conner's machinations stopped her in the parking lot with the merchandise and asked her to return to the store. Conner refused and attempted to leave, but she was apprehended by the two officers. A physical struggle ensued during which Conner kicked one officer in the shin, punched the other, and exclaimed to onlookers that she was being raped. Conner was eventually escorted back in to the store, still wearing the suede jacket. The police were summoned, Conner was searched, and cocaine was found in the pocket of the jeans she was wearing. Arrested and bound for jail, Conner agreed to pay for the items. Needless to say, Conner's belated offer was rejected and she was charged with robbery, possession of cocaine, and trespass.
During the trial, Conner testified to a different version of events, explaining that she was shopping with a friend, Wendy, who filled the cart with the merchandise and when Wendy left to retrieve something from her car, Conner remained with the cart. When her friend did not return, Conner went to the garden section to see if she could spot her friend in the parking lot and this is where she was accosted by the two officers. As for the cocaine, she testified that the jeans she was wearing belonged to another friend, Penny, and that Conner did not know the drugs were in the *315 pocket. Penny and Wendy were never called to testify. Conner explained that she did not know Wendy's last name and did not know exactly where she lived. Conner also claimed that Penny's phone had been disconnected and that she had not talked to either friend since the incident. A skeptical prosecutor, Ms. Brennan, made the following comments during closing argument regarding Conner's version of events:
MS. BRENNAN: . . . [Conner] was at her friend Penny's house. Penny Dillon, who lives here in Orlando. Who lives she even gave an address for her over in Union Park. Wendy is Penny's friend. She knows she is going to trial. Yet she hasn't contacted Penny to come in here and testify that these are her pants. That she was staying with her. That she does go [sic] the Walmart with Wendy.
MR. VIA. Objection, Judge. State attorney is shifting the burden.
THE COURT: No. Overruled.
MS. BRENNAN: You don't hear from these people. When I asked her why haven't you talked, well, my phone's been disconnected. I don't have a phone. Her phone is disconnected. You're going to trial, you don't bother to get your witnesses? Your friend of seven years, Penny Dillon, you know where she lives. You know she is here in town. You don't bother. She wants you to believe these phantom friends, Penny and Wendy, exist. That she is at Penny's house. They are Penny's pants.
The jury found Conner guilty as charged and she appeals her judgment and sentence, arguing that this commentary impermissibly shifted the burden of proof to her and entitles her to a new trial.[1] The State contends that the remarks are fair comment and, alternatively, that any error is harmless.
Principles of due process require the state to prove every element of a crime beyond a reasonable doubt. See Jackson v. State, 575 So.2d 181 (Fla.1991). This requirement is "`basic in our law and rightly one of the boasts of a free society.'" In re Winship, 397 U.S. 358, 362, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (quoting Leland v. Oregon, 343 U.S. 790, 803, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952) (Frankfurter, J., dissenting)). This burden is static: it never leaves the state. See Brown v. State, 454 So.2d 596, 598 (Fla. 5th DCA) ("[T]he burden of proving guilt beyond a reasonable doubt never shifts from the State. . . ."), review denied, 461 So.2d 116 (Fla.1984); Bolin v. State, 297 So.2d 317 (Fla. 3d DCA), cert. denied, 304 So.2d 452 (Fla.1974). Hence, a defendant is generally under no obligation to present witnesses or evidence. Jackson. Accordingly, to prevent the jury from being misled into believing that the defendant has the burden of proof, the state is forbidden from commenting on the defendant's failure to produce evidence to refute an element of the crime he or she is charged with committing. Evans v. State, 838 So.2d 1090 (Fla.2002), cert. denied, 540 U.S. 846, 124 S.Ct. 121, 157 L.Ed.2d 84 (2003); Jackson.
However, the courts apply a narrow exception that allows appropriate comment when the defendant voluntarily assumes a burden of proof by asserting the defenses of alibi, self-defense, and defense of others, relying on facts that could only be elicited from a witness who is not equally available to the state. Jackson; White *316 v. State, 757 So.2d 542 (Fla. 4th DCA 2000); Davis v. State, 744 So.2d 1091 (Fla. 5th DCA 1999); Janiga v. State, 713 So.2d 1102 (Fla. 2d DCA 1998); D'Annunzio v. State, 683 So.2d 151 (Fla. 5th DCA 1996).[2] If one of these defenses is asserted, the burden descends upon the defendant to present proof sufficient to establish a reasonable doubt in the minds of the jurors. Flowers v. State, 152 Fla. 649, 12 So.2d 772, cert. denied, 320 U.S. 767, 64 S.Ct. 49, 88 L.Ed. 458 (1943); Sanders v. State, 779 So.2d 522 (Fla. 2d DCA 2000).[3] In its search for the truth, the jury will ascertain the credibility of the witnesses and weigh the evidence presented, see Flowers, and if it determines that the defense has been satisfactorily established, a reasonable doubt may be created that entitles the defendant to the sought after acquittal.
This exception incorporates the common-sense notion that these defenses can easily be the product of pure fantasy contrived by prevaricators bent on avoiding the consequences of guilt. Therefore, when the defendant presents evidence regarding the defense of alibi, self-defense, or defense of others, the state is permitted to comment on the defendant's failure to produce a witness when: (1) the evidence indicates the existence of a witness who could give relevant testimony, and (2) that witness has a special relationship with the defendant that does not make him or her equally available to the state. See Davis (quoting Lawyer v. State, 627 So.2d 564, 567 (Fla. 4th DCA 1993), dismissed, 639 So.2d 981 (Fla.1994)).
Conner's version of eventsthat she was accosted by loss prevention employees while pushing a cart filled with items by her friend Wendy before she ever left the store and that the cocaine found in the pockets of the pants she was wearing was not hers but belonged to another friend named Pennywas never corroborated by any other witness because Penny and Wendy were never called to testify. Conner claimed that she did not know Wendy's last name and did not know exactly where she lived. Conner also claimed that Penny's phone had been disconnected and that she had not talked to either friend since the incident.
Based on Conner's version of events, had Penny and Wendy been called to testify, it does not appear that Conner would have been asserting a defense of alibi, self-defense, or defense of others. Hence, we conclude that the narrow exception does not apply and therefore the State's remarks to the jury that Conner had failed to call either woman as a witness were error.
Our determination that the comments were error does not end our analysis. It is well settled that such errors do *317 not require an automatic reversal if we determine the error is harmless. See Jackson; State v. DiGuilio, 491 So.2d 1129 (Fla.1986); White. Abiding the harmless error standard to determine whether the State, as the beneficiary of the error, proved beyond a reasonable doubt that the improper comments did not contribute to the verdict, we reviewed the entire record, closely examining the permissible evidence and even more closely examining the erroneous comments Conner claims improperly influenced the jury. DiGuilio; see also Jackson.
Our examination of this record reveals overwhelming permissible evidence of guilt presented to the jury by the State.[4] But this does not end the analysis: next we must more closely examine the improper remarks made by the State to determine whether, despite the overwhelming permissible evidence of guilt, the error affected the jury.
Our analysis reveals that the improper remark was a brief, isolated comment that was made in the State's rebuttal closing argument. It was not repeated or emphasized. See Fitzpatrick v. State, 900 So.2d 495, 517 (Fla.2005) ("Based upon the review of the record, this Court concludes that this isolated and singular comment does not constitute harmful error."); Jones v. State, 748 So.2d 1012, 1022 (Fla.1999) (holding improper comment on defendant's right to remain silent was harmless error because the evidence was overwhelming and "the remark was neither repeated nor emphasized"), cert. denied, 530 U.S. 1232, 120 S.Ct. 2666, 147 L.Ed.2d 279 (2000). Moreover, shortly after the improper remark was made, the State concluded its rebuttal argument and the trial court immediately presented the jury instructions. The first instruction read to the jurors instructed them that the State had the burden of proof and shortly thereafter, the trial court instructed the jurors that "the defendant is not required to present evidence or prove anything."
The record also reveals that the essential issue in dispute was whether Conner left the points of sale within the store without paying for the items in the cart: it was not whether Wendy actually put them there. Additionally, when Conner was stopped outside the store, she was found wearing the suede jacket she had put on *318 while in the store, but had not paid for. Certainly, Wendy's alleged conduct would not relieve Conner of the consequences of that guilty act. Hence, the comment that Conner failed to call Wendy as a witness has little to do with the fact that Conner left the store without paying for the coat she was wearing and the items in the cart. As for Penny, we do not believe that the jury was affected at all by the improper remarks regarding the failure to call a witness whose appearance at trial would have been problematic and highly unlikely given the fact that she would have to implicate herself by testifying that she was the owner of illegal drugs.
We conclude beyond a reasonable doubt that the jury was not affected by the erroneous remark and, therefore, the error was harmless. Accordingly, we affirm Conner's judgment and sentence.
AFFIRMED.
PLEUS, C.J. and ORFINGER, J., concur.
NOTES
[1] Conner raises another issue, contending that the trial court erred in refusing to give a requested jury instruction regarding justifiable use of non-deadly force. We affirm as to this issue without further comment.
[2] This exception is narrow indeed: the Florida Supreme Court has indicated that it may be limited to the defenses of alibi, self-defense, and defense of others. In Rodriguez v. State, 753 So.2d 29, 38-39 (Fla.), cert. denied, 531 U.S. 859, 121 S.Ct. 145, 148 L.Ed.2d 96 (2000), the court explained:

There is a "narrow exception" to this rule, applicable where the defendant has asserted a defense of alibi, self-defense, or defense of others, relying on facts that could be elicited only from a witness who is not equally available to the State. Jackson, 575 So.2d at 188. Unless the circumstances fall within this "narrow exception," these matters are not the subject of fair comment, and any comment "fairly susceptible" to being construed as a comment on the failure to mount a defense is impermissible.
Id. at 38-39 (emphasis added).
[3] The defendant's burden is to establish the defense to the satisfaction of the jury; proof beyond a reasonable doubt is a burden reserved for the state. See Sanders v. State, 779 So.2d 522 (Fla. 2d DCA 2000).
[4] See Fitzpatrick v. State, 900 So.2d 495, 517 (Fla.2005) ("On this record, we conclude that there was no reasonable possibility that Bousquet's testimony affected the jury verdict, and it was therefore harmless beyond a reasonable doubt. There was overwhelming permissible evidence of Fitzpatrick's guilt."); Sempier v. State, 907 So.2d 1277 (Fla. 5th DCA 2005) ("Generally, where there is overwhelming evidence of a defendant's guilt, a prosecutor's assertion that the defendant is guilty may be considered harmless.") (citation omitted); LaFleur v. State, 855 So.2d 155, 156 (Fla. 1st DCA 2003) ("[O]ur independent review of the case and the record reveals overwhelming evidence of LaFleur's guilt. Thus, even assuming any error occurred in the trial court's exclusion of the victim's statements, such error was harmless."); Fuentes v. State, 727 So.2d 275, 275 (Fla. 3d DCA 1999) ("[A]ny such error is harmless in light of the defendant's confession and the overwhelming evidence of guilt."); Stephens v. State, 559 So.2d 687, 691 (Fla. 1st DCA 1990) ("We believe the statement made by appellant which was brought out during examination of Officer Rutherford was fairly susceptible of being interpreted by the jury as a comment of [sic] appellant's right of silence, and ought not to have been allowed. However, the error was harmless given the overwhelming evidence of guilt established at trial."), approved on other grounds, 572 So.2d 1387 (Fla.1991); see also Stephens v. State, 787 So.2d 747, 759 (Fla.) ("Weighing all the evidence in this case and considering the overwhelming evidence of guilt, we find the trial judge acted within his discretion, and any potential error was harmless.") (citations omitted), cert. denied, 534 U.S. 1025, 122 S.Ct. 556, 151 L.Ed.2d 431 (2001).