DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**DESMOND EUGENE OWENS,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D17-3504

[December 19, 2018]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Glenn D. Kelley, Judge; L.T. Case No. 16CF009270AMB.

Carey Haughwout, Public Defender, and Erika Follmer, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Alexandra A. Folley, Assistant Attorney General, West Palm Beach, for appellee.

HILAL, JENNIFER, Associate Judge.

The defendant was found guilty after a jury trial of fleeing or attempting to elude a law enforcement officer with lights and sirens activated while driving recklessly or at a high speed pursuant to section 316.1935(3)(a), Florida Statutes. The defendant appeals his judgment and sentence on the basis that the court erred in: (1) denying his motion for judgment of acquittal; (2) overruling his objection regarding the prosecutor's misstatement of law in closing argument; and (3) overruling his objections to the troopers' testimony characterizing the defendant's driving maneuvers as "fleeing." We affirm as to issue one and reverse and remand on issue two. We decline comment on issue three.

### Background

At trial, two Florida Highway Patrol troopers testified that they were conducting a traffic detail on the Florida Turnpike. They were both in uniform and stood approximately ten to fifteen feet behind their marked vehicles.

Trooper one noticed a black Chevy sedan, later known to be driven by the defendant, make a very erratic and abrupt lane change from the center to the outside lane. Trooper two indicated that the Chevy was trying to pass slower moving traffic, but it did so in an unsafe manner without a turn signal. They both estimated the Chevy's speed to be approximately 90 miles per hour and clocked him driving 89 miles per hour using their laser guns. The posted speed limit was 65 miles per hour.

As the Chevy approached where the troopers were standing, both troopers stated they made eye contact with the driver. Trooper one got into his vehicle, activated his lights and siren, and attempted to catch up to the Chevy to issue a speeding ticket. Trooper one accelerated to 120 miles per hour in an effort to reach the speeding vehicle to no avail. He observed the Chevy go from the right-hand lane to the center lane, and from the center lane back to the right-hand lane, and then to the exit ramp.

Over defense objection, Trooper one testified that this driving pattern was consistent with "[f]leeing" and "[t]rying to get away from [him]." He further testified over the defendant's objection, "he attempted to flee from me" when the defendant sideswiped two vehicles and hit a concrete barrier at the exit ramp.

Trooper two also observed the driver's maneuvers and "evasive action[s]" and testified over defense objection that unlike this motorist, drivers "usually step on the brakes to slow down." The prosecutor proceeded to ask Trooper two if the defendant, in his opinion, was fleeing and eluding, to which she replied "yes." However the court sustained this objection.

After the crash, the defendant got out of his vehicle, looked back at Trooper one, who was now on foot, and proceeded to jump over the guardrail of the exit ramp. Trooper one was able to detain the defendant about a quarter of a mile away from the crash.

During closing argument, the prosecutor stated:

> Most everyone looked back at me with these kind of dumbfounded faces saying what do you mean how did we know? The lights go on, the sirens go on, they're right behind you. It's very obvious when a law enforcement officer is trying to pull you over. Everybody knows.

2

You have a feeling in your stomach, you know when someone has seen you doing something wrong you know right away you've been caught. There's no question about it.

How did this come about? They said they were doing speed detail. Let's be frank about what it is, it's a speed trap and you've all been there. They're sitting on the side of the highway, they're just looking all day for people that are speeding. And it sucks. Everyone's got caught in that.

The problem is that they see you from far, far away. They know you're coming from far, far away and that you're speeding. That's why they talked about pointing the laser gun, they get the readout. It magnifies the image and they know right away you've been speeding, their attention is caught on you.

So what does a reasonable person do in that situation? Everybody sees the officer on the side of the road. Crap, I'm speeding. Slams on the brakes right away. Everybody slows down because [y]ou know the law enforcement officer has seen [y]ou. You don't continue to speed, continue to erratically make lane changes, trying to get away from the officer. ***That's not what a reasonable person does and that's what the standard is, what would a reasonable person in that circumstance do?***

Defense counsel objected that this was a "misstatement of the law." The objection was overruled. The prosecutor continued:

Of course he's going to try to exit off. This isn't someone who's past their exit, oh, my gosh, I'm quickly go past my exit, what am I going to do? I'm going to first go over to the center lane and then I'm going to go all the way back over to the exit ramp. That's not what you do. That's not what the reasonable person does.

The prosecutor then addressed the four elements of the crime and told the jury that the only element at issue was whether the defendant knew he had been directed to stop.

### Analysis

We review trial court rulings regarding the propriety of comments made during closing argument for an abuse of discretion. *Cardona v. State*, 185 So. 3d 514, 520 (Fla. 2016).

> Where the comments were improper and the defense objected, but the trial court erroneously overruled defense counsel's objection, we apply the harmless error standard of review. This standard involves placing the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction.

*Id.*

The defendant argues the State misstated the law in closing argument. Specifically, the prosecutor told the jury that because the defendant did not drive in a manner a reasonable person would drive when seeing troopers conducting a speed detail, he was driving recklessly by fleeing them. Further, the defendant contends that relating him to a reasonable person who sees a speed detail or who is trying to exit the highway eliminates the State's burden to prove that he knew he was being directed to stop, and this was a crucial element that the State needed to prove.

The State responds that the "reasonable person" reference did not refer to the standard used to determine whether the defendant drove recklessly. Rather, the reference was "a tool for the jury to infer" that the defendant knew the trooper was attempting to stop him. Moreover, the State argues that the prosecutor explained in closing how the evidence proved each element of the crime, which corrected any potential error.

"It is error for a prosecutor to misstate the law during closing arguments." *Evans v. State*, 177 So. 3d 1219, 1235 (Fla. 2015) (finding error when the prosecutor misstated the law in closing argument); *see also Charriez v. State*, 96 So. 3d 1127, 1127 (Fla. 5th DCA 2012) (misstating the standard of reasonable doubt with no objection was one of three improper comments which cumulatively amounted to fundamental error).

4

The prosecutor here misstated the law.[1]   The reasonable person standard is the incorrect standard in determining reckless driving, knowledge and fleeing.  Although the State may utilize different tools to infer knowledge, the prosecutor expressly told the jury that the applicable standard was a reasonable person standard, which is a misstatement of law.  The trial court erred in overruling defense counsel's objection.  *See Warmington v. State*, 149 So. 3d 648, 655 (Fla. 2014) (finding error when counsel misstated the law and there was a timely and proper objection that was overruled).  We must next determine if the error was harmless. *Id.*

The improper statement here was not harmless because the State cannot show beyond a reasonable doubt that the prosecutor's misstatement of law did not affect the verdict.  *See State v. DiGuilio*, 491 So. 2d 1129, 1138 (1986).  As the prosecution recognized, "the only thing at issue is [element] number two," and the misstatement of law went directly to the only element at issue—whether defendant *knew* that he was being directed to stop.  *See Young v. State*, 137 So. 3d 532, 535 (Fla. 4th DCA 2014) (unable to find harmless error when a misstatement of law went directly towards the "hotly contested" issue "critical to the state's case").  Thus, it cannot be said that the State's comment had no impact on the jury.

We reverse and remand the case to the trial court for a new trial.

MAY, J. concurs.

FORST, J. dissents with opinion.

FORST, J., dissenting.

Because I do not believe that the prosecutor's comment was improper when viewed in context, I respectfully dissent as to the issue addressed by

---

[1] To prove the crime of Fleeing to Elude a Law Enforcement Officer, the State must prove the following four elements beyond a reasonable doubt: 1) the defendant was operating a vehicle upon a street or highway in Florida; 2) the defendant knowing he had been directed to stop by a duly authorized law enforcement officer, willfully fled in a vehicle in an attempt to elude a law enforcement officer; 3) the law enforcement officer was in an authorized law enforcement patrol vehicle with agency insignia and other jurisdictional markings prominently displayed on the vehicle and with the lights and sirens activated; and 4) during the course of the fleeing or attempting to elude, the defendant drove at high speed or in any manner demonstrating a wanton disregard for the safety of persons or property.  Fla. Std. Jury Instr. (Crim.) 28.8.

the majority.

The subject comment was made in closing argument where attorneys are afforded wide latitude in arguing to the jury. *See, e.g.*, *Thomas v. State*, 748 So. 2d 970, 984 (Fla. 1999). Furthermore, "[w]hen evaluating a prosecutor's comment, the comment 'should be examined in the context in which it was made.'" *Jackson v. State*, 89 So. 3d 1011, 1018 (Fla. 4th DCA 2012) (quoting *Lubin v. State*, 963 So. 2d 822, 824 (Fla. 4th DCA 2007)).

The prosecution's reference to a "reasonable person" standard was not a misstatement of the law, as the State was not articulating a legal standard. Rather, the "reasonable person" reference was a tool to assist the jury in making a factual inference regarding the knowledge element of the crime charged.

Moreover, as noted by the majority, *after* making the "reasonable person" comment, the prosecutor addressed the four elements of the crime and told the jury that the only element at issue was whether the defendant knew he had been directed to stop by law enforcement officers. The burden was on the State to present evidence and argument that would permit the jury to infer that the defendant had this knowledge. It was in that *context* that the prosecutor earlier referenced how a "reasonable person" would know that law enforcement was trying to pull him over. The prosecutor made no further reference to the "reasonable person."

Viewed in context, I find the comment complained of to be within the bounds of a proper closing argument. Accordingly, I would affirm the trial court's final judgment.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***

6