DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**BILLY JOE DARBY,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D2024-3153

[March 4, 2026]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Peter Holden, Judge; L.T. Case No. 062021CF011805A88810.

Daniel Eisinger, Public Defender, and Robert Gerald Porter, Assistant Public Defender, West Palm Beach, for appellant.

James Uthmeier, Attorney General, Tallahassee, and Joseph Mollica, Assistant Attorney General, West Palm Beach, for appellee.

GERBER, J.

The defendant appeals from his conviction and sentence for attempted manslaughter by act, as a lesser included offense of attempted first-degree murder. The defendant argues the circuit court erred in two respects by: (1) denying the defendant's requested jury instruction on the lesser included offense of misdemeanor battery; and (2) during the state's closing argument, overruling the defendant's objection to the state incorrectly implying the defendant had a duty to retreat. On the first argument, we affirm without further discussion. On the second argument, we conclude the circuit court erred in overruling the defendant's objection. However, the error was harmless. Thus, we affirm on the second argument as well.

### *Relevant Procedural History*

At trial, the victim testified as follows. While the victim was at a restaurant one night, the defendant spit in the victim's face. The victim head-butted the defendant, who ran away. The victim went into the bathroom to clean himself up. When the victim tried to exit the bathroom,

the defendant was holding the door closed.  The victim's friend came over to open the door, and the defendant ran away for a second time.

The victim followed the defendant into an alley behind the restaurant. The victim saw the defendant yelling and walking back towards the victim. The victim then saw the defendant, from 35-40 feet away, pick up a gun from the ground and begin shooting.  As the victim ran to the restaurant, he was struck by two shots, one to his knee and one below his knee.

The defendant chose to testify, and pertinently testified as follows.  After the victim had head-butted the defendant, they began to fight, which spilled out into the alley.  At that point, two of the victim's friends, who were bigger than the defendant, joined the fight.  The defendant eventually fell to the ground and was being kicked and stomped on.  The men, one of whom was swinging a blade, threatened to kill the defendant.  The defendant managed to get up and run away down the alley.  The men chased the defendant, but he was able to get away.

The defendant went to his scooter that was parked a short distance away.  However, his wallet, cellphone, and keys—which he had when the fight had started—were gone.  The defendant realized he needed to go back to the alley to look for those items.  He grabbed his gun from the scooter as a precaution.  As he walked down the alley, he saw the door to the restaurant open and two men come out.  At first, he thought the two men might have been the police, so he put his gun on the ground to not look like a threat.  However, as the men started moving quickly toward him, he realized they were not the police, but instead were the men who had jumped him earlier.  He thought they were going to attack him again, and he heard the victim yell, "I'm going to kill you." According to the defendant, after seeing and hearing this, he was scared for his life.  He grabbed his gun off the ground and started firing warning shots into the ground in front of him with the intention of scaring the men away.  He continued to fire warning shots as the men ran away because he was still scared.

During closing argument, the prosecutor pertinently told the jury:

> [Y]ou'll be given … the justifiable use of deadly force instruction, which is what the [d]efense claims happened in this case ….  [*The defendant] was permitted to [s]tand [his] [g]round.  He did not have a duty to retreat.*  And you will be provided … this instruction, which says, the [d]efendant was justified in using deadly force if he … reasonably believed that such force was necessary to prevent imminent death or great bodily harm to himself or another.

2

....

> ... But the question is imminency. Was there an imminent threat to [the defendant] that required the use of deadly force? The answer is no, because [the defendant] put himself back in that alley.
>
> And remember how far apart [the defendant] even was from [the victim]. [The defendant] tells you ... that he walked into that alley ... with the firearm. ... The alley that he could have turned around and left. *So when we hear about the duty to retreat, the* [*d*]*efendant had no duty to retreat, **it's not in this situation.*** It's not after you put yourself in the situation and said, oh, well—well, now I think [the victim is] coming for me. I don't have to go anywhere. I can start shooting.

(emphases added).

The defendant objected, arguing "[m]isstatement of the law." The circuit court told the jury: "[Y]ou'll get the law from me. Lawyers have a right to talk about the law. I'm going to overrule the objection. There's wide latitude during closing arguments."

Later, during the reading of the jury instructions, the circuit court correctly recited the justifiable use of deadly force standard instruction, which pertinently included:

> The Defendant was justified in using deadly force if he reasonably believed that such force was necessary to prevent imminent death or great bodily harm to himself or another. *Defendant had no duty to retreat before using deadly force.* In deciding whether the Defendant was justified in the use of deadly force, you must consider the circumstances at the time the force was used. The danger need not have been actual. However ... the appearance of imminent danger must have been so real that the Defendant actually believed that the use of deadly force was necessary.

(emphases added). The jury took that written instruction to the jury room during deliberations, along with the other written instructions.

The jury convicted the defendant of attempted manslaughter by act, as a lesser included offense of attempted first-degree murder.

3

### *This Appeal*

This appeal followed. As stated above, the defendant's second argument is that the circuit court erred by overruling the defendant's objection to the prosecutor's closing argument, which had incorrectly implied the defendant had a duty to retreat under the evidence presented.

"We review trial court rulings regarding the propriety of comments made during closing argument for an abuse of discretion." *Cardona v. State*, 185 So. 3d 514, 520 (Fla. 2016). "Where the comments were improper and the defense objected, but the trial court erroneously overruled defense counsel's objection, we apply the harmless error standard of review." *Id.* "This standard involves placing the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction." *Id.* (citations and internal quotation marks omitted).

Here, we agree the circuit court erred by overruling the defendant's objection to the prosecutor's closing argument, which had incorrectly implied the defendant had a duty to retreat under the evidence presented.

Section 776.012(2), Florida Statutes (2021), provides:

> A person is justified in using or threatening to use deadly force if he or she reasonably believes that using or threatening to use such force is necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony. *A person who uses or threatens to use deadly force in accordance with this subsection* ***does not have a duty to retreat*** *and has the right to stand his or her ground if the person using or threatening to use the deadly force is not engaged in a criminal activity and is in a place where he or she has a right to be.*

§ 776.012(2), Fla. Stat. (2021) (emphases added).

The defendant, when he returned to the alley with his handgun, arguably was not engaged in criminal activity, and was in a place where he had a right to be. Thus, the defendant did not have a duty to retreat, and had the right to stand his ground, if he reasonably believed the victim was using or threatening to use deadly force. As such, the circuit court

erred in overruling the defendant's objection to the prosecutor's argument that "Defendant had no duty to retreat, ***it's not in this situation***."

However, the error was harmless. Where a trial court errs in overruling a defense objection to a prosecutor's incorrect statement of law, the error can be harmless if:

> (1) The misstatement was presented to the jury in the context of closing argument by an advocate, not in the context of an instruction by the court; (2) the misstatement was an innocent one—the prosecutor was struggling with a subtle rule of law that is difficult to articulate; (3) although the prosecutor repeated the incorrect statement to the jury … [the prosecutor] minutes later read the proper instruction … ; (4) immediately following the prosecutor's … improper statement, the court announced before the jury that (a) the court would be instructing them on the law, (b) they were to follow only its instructions, and (c) what the lawyers say is neither evidence nor law; (5) before the jury retired, the court also read the standard instruction to the jury; and (6) the jury took a copy of the standard instruction into the jury room during deliberations.

*Almeida v. State*, 748 So. 2d 922, 927 (Fla. 1999).

Here, five of the six *Almeida* factors are met. First, the prosecutor, not the circuit court, misstated the defendant's duty to retreat. Second, the prosecutor's misstatement appears to have been an innocent mistake, because only one minute earlier, the state had told the jury that the defendant "did not have a duty to retreat." Third, although the prosecutor did not state the proper standard after misspeaking, the prosecutor had stated the proper standard before misspeaking. Fourth, after the prosecutor misspoke, the circuit court announced to the jury: "[Y]ou'll get the law from me. Lawyers have a right to talk about the law." Fifth, the circuit court later read the proper instruction to the jury: "Defendant had no duty to retreat before using deadly force." Sixth, the jury took that proper instruction to the jury room during deliberations.

Based on the foregoing, the circuit court's error in overruling the defendant's objection to the prosecutor's closing argument—which had incorrectly implied the defendant had a duty to retreat under the evidence presented—was harmless beyond a reasonable doubt.

The defendant nevertheless argues "[h]armful error has regularly been found when a jury is incorrectly instructed that a defendant had a duty to retreat," relying on *McGriff v. State*, 160 So. 3d 167, 168-69 (Fla 1st DCA 2015), and *Andujar-Ruiz v. State*, 205 So. 3d 803, 806-07 (Fla. 2d DCA 2016). However, *McGriff* and *Andujar-Ruiz* are distinguishable because both cases involved <u>the trial court</u> incorrectly instructing the jury on the duty to retreat. Here, <u>the prosecutor</u> incorrectly implied the defendant had a duty to retreat.

The defendant further argues the prosecutor's comment was harmful because it went directly to "the only element at issue," citing *Owens v. State*, 261 So. 3d 585, 589 (Fla. 4th DCA 2018), and *Young v. State*, 137 So. 3d 532, 535 (Fla. 4th DCA 2014). However, *Owens* and *Young* are distinguishable because neither case indicates that, after the prosecutor had misstated the law, the trial court later provided the correct law. Here, only the prosecutor had incorrectly implied the defendant had a duty to retreat, while the circuit court later correctly instructed the jury that the defendant had no duty to retreat.

### *Conclusion*

In sum, the circuit court's error in overruling the defendant's objection to the prosecutor's closing argument—which had incorrectly implied the defendant had a duty to retreat under the evidence presented—was harmless beyond a reasonable doubt. Therefore, we affirm the defendant's conviction and sentence.

*Affirmed.*

FORST and SHEPHERD, JJ., concur.

*    *    *

***Not final until disposition of timely-filed motion for rehearing.***